# Employer's Rental of an Employee's Residence During His Participation in the President's Executive Exchange Program

An employer may rent an employee's house during his participation in the President's Executive Exchange Program on the same basis as any ordinary renter. However, 18 U.S.C. § 209 would prohibit an arrangement whereby the employer would rent without using the property or permit the employee to have continued access to the property, because this would have the effect of subsidizing the employee's government service.

March 25, 1982

## MEMORANDUM OPINION FOR THE CHIEF COUNSEL, OFFICE OF GOVERNMENT ETHICS

This responds to your request for our formal concurrence in the Office of Personnel Management (OPM) June 20, 1980, opinion and the Office of Government Ethics (OGE) July 16, 1980, concurring opinion regarding 18 U.S.C. § 209(e). Those opinions addressed a proposal by Corporation A to arrange for the rental of an employee's residence while the employee participated in the President's Executive Exchange Program. The Executive Director of the President's Commission on Executive Exchange (PCEE) has sought our formal concurrence in these opinions.

The OPM memorandum concludes that "arrangements by a company to assist the participating exchange employee in the rental of his or her permanent residence" during the exchange year would, "depending upon the circumstances," be permissible. If a company rents an employee's residence "on terms similar to those that would obtain if the employee rented the residence directly to an individual tenant," OPM concludes that the rental will not offend § 209.

Your memorandum agrees with this conclusion, noting that:

> the individual circumstances of any case would control. For example, excessive rental payments by the employer or the payment by the employer of management fees for the rental property would be objectionable under 18 U.S.C. § 209. . . . But a rental where "the employee is left in no better position than he would be in if he rented the residence directly to an individual tenant" would not be objectionable.

We concur in this conclusion, with the following comments.

224

Both the OPM and the OGE memoranda rely on prior OLC opinions. The OPM memorandum quotes a 1978 OLC memorandum opinion for the President's Commission on White House Fellowships as follows:

> When the company arranges for the rent of the permanent residence, or rents the residence itself, the employee should be left in no better position than he would be in if he rented the residence directly to an individual tenant. For example, the employee should bear any rental or management fees entailed in the firm's renting the residence to an individual tenant; and *if the arrangement provides for the firm to rent the residence and leave it unoccupied,* the fair market rental should be reduced by a reasonable estimate of maintenance and other costs that foreseeably will not be incurred.

Memorandum Opinion for the Director, President's Commission on White House Fellowships, from Larry A. Hammond, Acting Assistant Attorney General, Office of Legal Counsel, 2 Op. O.L.C. 267, 269 (1978) (emphasis added). A footnote in that 1978 letter stated that "implicit" in our conclusion that a company could rent an employee's personal residence during a White House Fellowship was the understanding that "the employee was prepared to rent the house to a tenant who would reside there, so that the employer would not be paying the employee for a residence the employee intended to leave vacant. In the latter situation, the employer's payment of rent could disguise a supplementation of government salary." *Id.* note 1, at 269.

These statements may cause some confusion in assessing the permissibility of any particular rental. While the text suggests that it would be proper for a company to rent an employee's home and leave it empty, the footnote suggests that such an arrangement might serve as a disguised supplementation of salary, which would, of course, be impermissible.

To clarify this question, we believe it should be understood that an employer may *not* rent an employee's home during his or her exchange year merely to let the house sit empty. As both the OGE and OPM memoranda emphasize, and as prior OLC opinions have indicated, arrangements whereby an employer rents an employee's home during an exchange year are generally permissible insofar as the employee is left in no better position than he or she would have been in if an individual tenant were renting the residence. Thus, the terms of such rentals must be comparable to the terms of any open-market agreement that might be reached.

When a company pays rent to allow a rental property to remain vacant and unused, however, ordinary rental-market principles are not being applied. Since we are aware of no reason to enter into such an agreement except to provide an extra benefit to the employee, and none have been suggested, such an arrangement would have to be viewed as an impermissible supplementation of the employee's government salary.

Therefore, a company may not arrange to rent an employee's permanent residence during the exchange year if the home is to be left vacant, or, alter-

natively, if the employee is to be granted continued access to the residence. If, however, (1) a company rents, or arranges the rental of, an employee's home for a fair market rental, for the purpose of either using the residence itself or renting it to others during that year; (2) the employee and his or her family will not have use of the residence during the rental period; and (3) the employee bears any rental, management, or other fees and costs ordinarily borne by a lessor, so that the employee is "left in no better position than he would be in if he rented the residence directly to an individual tenant," we concur in your conclusion that § 209 is not offended. In essence, a company may arrange for rental of an employee's home during an exchange year on the same basis as any other renter, but may not enter into arrangements that would not ordinarily obtain on the open market or that would have the effect of "subsidizing" the employee by, for example, paying rent without using the property or permitting the employee to have continued access to the property.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*